UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANTAY AMES,<br><br>       Plaintiff,<br><br>  v.<br><br>BONNEVILLE JOINT SCHOOL DISTRICT NO. 93, a political subdivision of the State of Idaho; CRAIG MILLER, in his official and individual capacities; and ANDREW CHAPPLE, in his official and individual capacities,<br><br>       Defendants. | Case No. 4:22-cv-00364-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Defendants' Motion for Summary Judgment and two Motions to Strike. (Dkt. 38, 44, 45). The motions are fully briefed and ripe for the Court's consideration.[1] A hearing on the motions was conducted on August 28, 2024. Having carefully considered the arguments and submissions of the parties and the entire record herein, the Court finds as follows.

---

[1] The undersigned Magistrate Judge has jurisdiction to preside over this matter by virtue of all parties' express written consent. 28 U.S.C. § 636(c)(1); D. Idaho Local Civil R. 72.1(a)(1) (authorization to decide civil cases with the parties' consent).

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND[2]

### 1.    Factual Allegations

Plaintiff, Shantay Ames, began working for Defendant Bonneville Joint School District No. 93 (District 93) as a long-term substitute elementary school teacher in 2006. In the Fall of 2020, Plaintiff became a seventh grade history teacher at Rocky Mountain Middle School. The following school year, 2021-2022, Plaintiff transferred to a position teaching eighth grade history at Black Canyon Middle School. A male student, referred to in this case as John Doe (JD), was assigned to Plaintiff's history class for the 2021-2022 school year. (Dkt. 1 ¶ 13); Fed. R. Civ. P. 5.2(a)(3).[3]

JD frequently engaged in offensive and inappropriate behavior at school against both students and teachers prior to and during the 2021-2022 school year.[4] Plaintiff alleges that she was individually subjected to daily and escalating sexual harassment by JD beginning at the commencement of the 2021-2022 school year, and that she and other teachers tried unsuccessfully to stop JD's behavior using the disciplinary actions allowable under the school policy. Plaintiff claims school administrators – specifically

---

[2] Consistent with the standard on summary judgment, the factual background is written to reflect that all evidence in the record is construed in a light most favorable to the non-moving party, who is also given the benefit of all reasonable inferences which can be drawn from that evidence.

[3] The materials relevant to the motion for summary judgment are filed under seal because they contain private, confidential information and references to JD, who is a minor. (Dkt. 42). No private or confidential information is contained in this written decision and, therefore, it will not be filed under seal.

[4] In this Order, the specific offending conduct is not identified as doing so would reveal matters that are sealed pursuant to the protective order and because the parties do not dispute that JD engaged in the conduct that was reported. However, the parties do dispute whether the reported conduct was severe and pervasive.

**MEMORANDUM DECISION AND ORDER - 2**

Craig Miller, District 93 administrator; and Andrew Chapple, District 93 administrator and vice principal of Black Canyon Middle School – were aware of JD's behavior and failed to take action to stop JD from continuing his inappropriate conduct for several months despite reports by Plaintiff and other teachers.

On January 6, 2022, a meeting was held with Miller, Plaintiff, one other teacher, the District 93 Title IX Coordinator, and JD's parents to discuss JD's behavior. During the meeting, Plaintiff alleges she was verbally attacked by JD's parents and blamed for not preventing his conduct. Plaintiff left the meeting and went on personal medical leave thereafter due to the mental and physical strain of the circumstances. Following the meeting, Plaintiff alleges she was pressured by Miller to not file a Title IX complaint.

On January 18, 2022, counsel for Plaintiff sent a letter to Scott Woolstenhulme, District 93 superintendent, formally complaining of sexual harassment and discrimination by JD; stating District 93's administration had failed to take action; and requesting paid leave until the situation was resolved. District 93 declined Plaintiff's request for paid leave and initiated a Title IX investigation. Plaintiff contends the Title IX investigation process was "disturbing and upsetting," and that she was forced to take unpaid leave during the entirety of the Title IX investigation – from January to April 2022. (Dkt. 39-1, PSOF ¶ 54; Dkt. 39-2, Dec. Ames ¶¶ 31-32).[5] Plaintiff claims the toll of these events deprived her of access to the benefits of her employment, created a hostile work

---

[5] The parties dispute whether Plaintiff was paid for the time she was on leave, which the Court will discuss later in this decision.

**MEMORANDUM DECISION AND ORDER - 3**

environment, impacted her mental and physical health, resulted in her constructive discharge, and, ultimately, caused her to find another occupation as she did not believe she could return to teaching.

## 2.    Procedural History

On May 24, 2022, Plaintiff filed a Charge of Discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission. A Notice of Right to Sue was issued on June 2, 2022. Plaintiff initiated this lawsuit on August 22, 2022, by filing a Complaint alleging the following five causes of action:

> Count One: Violation of Title VII and the Idaho Human Rights Act (IHRA) for hostile work environment as against District 93.

> Count Two: Violation of Title VII and the IHRA for retaliation against District 93.

> Count Three: Violation of 42 U.S.C. Section 1983 under the Equal Protection Clause against all Defendants.

> Count Four: Violation of Title IX for actual notice against District 93.

> Count Five: Violation of Title IX for heightened risk against District 93.

(Dkt. 1). On March 8, 2024, Defendants filed a motion for summary judgment on all counts. (Dkt. 38). Defendants also filed motions to strike certain portions of Plaintiff's declaration and an exhibit, which were submitted by Plaintiff in response to the motion for summary judgment. (Dkt. 44, 45). Plaintiff opposes each of Defendants' motions. (Dkt. 39, 48, 49). The Court will first address the motions to strike, as they are determinative of the materials properly considered on the motion for summary judgment,

**MEMORANDUM DECISION AND ORDER - 4**

and will then take up the motion for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that summary judgment is proper as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the burden shifts to the nonmoving party to produce specific evidence of a genuine dispute of material fact supporting its claim or defense. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). To defeat a motion for summary judgment, the respondent cannot rely on an unsworn affidavit or the pleadings; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 5**

At summary judgment, the Court does not make credibility determinations, weigh the evidence, or determine the truth of the matter. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). Rather, the Court's role is to determine whether there is a genuine issue for trial. *Zetwick*, 850 F.3d at 441.

## DISCUSSION

### 1.    Motions to Strike

Under Federal Rule of Civil Procedure 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Motions to strike objecting to evidence submitted in support of or against a pending motion for summary judgment "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).[6] At the motion for summary judgment stage, the focus is on the content of the evidence. Even if the evidence is presented in a form that is currently inadmissible, such evidence may be

---

[6] The 2010 Advisory Committee Notes states: "There is no need to make a separate motion to strike." Consequently, motions to strike materials submitted in relation to a motion for summary judgment are generally disfavored in this District. https://www.id.uscourts.gov/district/judges/grasham/ Motion_Practices.cfm. The Court will consider the motion to strike filed herein to the extent necessary to evaluate whether the submissions are appropriate for consideration in ruling on the motion for summary judgment. The Court makes no determination concerning the admissibility of any evidence during trial at this time.

**MEMORANDUM DECISION AND ORDER - 6**

evaluated on a motion for summary judgment so long as it could be presented in an admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Burch v. Regents of Univ. of Cal*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006).

### A.   Motion to Strike Portions of Plaintiff's Declaration and Statement of Facts

Defendants move to strike thirteen categories of statements and evidence contained in Plaintiff's declaration and statement of material facts filed in response to the motion for summary judgment. (Dkt. 44).[7] Generally, Defendants argue the statements and evidence are inadmissible hearsay, irrelevant, unduly prejudicial, inconsistent with prior deposition testimony, and lack personal knowledge. Plaintiff opposes the motion, arguing the statements and evidence are admissible and proper for the Court's consideration on summary judgment. (Dkt. 48).

"'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion, are all duplicative of

---

[7] Defendants' memorandum in support of the motion to strike exceeds the page limitation by three pages. Dist. Local Civ. R. 7.1(b). Plaintiff moves to strike the excess pages. (Dkt. 48 at 2, n. 1). This is Defendants' second failure to adhere to the procedural rules. (Dkt. 46, 53). Because Plaintiff is not prejudiced given the ruling on the motion to strike, the Court has considered the excess pages. However, Defendants are again admonished to abide by the appliable rules going forward and cautioned that further failures to do so will be subject to appropriate repercussions. Defendants' contention that they complied with the local rules because their briefing was a compilation of several independent motions to strike is a wholly unreasonable interpretation of the plain language and spirit of the rule – particularly given motions to strike evidence on summary judgement are disfavored and the majority of Defendants' arguments are inapplicable at summary judgment. (Dkt. 52 at 2). To avoid future misconceptions, filing separate serial motions and other tactics to avoid the page limitations is contrary to the practice in this Court and will not be allowed going forward. The Court prefers a single motion and a single supporting brief. (Dkt. 15 at n. 1). If additional pages are needed, counsel should first contact opposing counsel to request a stipulation and, if unsuccessful, then seek leave of the Court to file additional pages.

**MEMORANDUM DECISION AND ORDER - 7**

the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F.Supp.3d 1158, 1164 (S.D. Cal. 2019) (alteration omitted) (quoting *Burch*, 433 F. Supp. 2d at 1119) (citing *Anderson*, 477 U.S. at 2482); *see also Sandoval*, 985 F.3d at 665. "Similarly, the [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented." *Holt*, 370 F. Supp. 3d at 1164 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008)). "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *Id.* (citing *Montoya v. Orange Cnty. Sheriff's Dept.*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013)); *Savage v. City of Whittier*, 689 F.Supp.3d 781, 793-94 (C.D. Cal. 2023) (finding Rule 401 and 403 objections inapplicable to adjudicating the motion for summary judgment). For these reasons, the Court will not consider Defendants' motions to strike made on the grounds that the evidence is irrelevant, prejudicial, inadmissible lay opinion, hearsay, or lacks personal knowledge. *Holt*, 370 F.Supp.3d at 1164 (citing *Burch*, 433 F.Supp.2d at 1122). However, the Court will discuss below certain of Defendants' objections to evidence that warrant clarification or are challenges properly raised on summary judgment.

### i.    Hearsay

Defendants argue many of the challenged statements are inadmissible hearsay. Plaintiff maintains the statements are admissible as they are not offered for the truth of

**MEMORANDUM DECISION AND ORDER - 8**

the matter asserted and are statements offered against an opposing party. (Dkt. 48).[8]

Hearsay is a statement, either oral or written, other than one made by the declarant while testifying at trial offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless an exclusion or exception applies. Fed. R. Evid. 802.

Here, the Court finds the statements challenged based on hearsay are properly considered on summary judgment, as the statements could be presented in a form that may be admissible at trial. Fed. R. Civ. P. 56(c)(2). For instance, many of the statements were made, adopted, or authorized by Defendants and, therefore, are not hearsay when offered by Plaintiff as evidence against Defendants. Fed. R. Evid. 801(d)(2). Further, statements by other teachers – Justin Zierke and Al Jones – and by Plaintiff herself may be offered not to prove the truth of the matter asserted, but to prove certain elements of Plaintiff's claims. Fed. R. Evid. 801(c)(2). For these reasons, the Court denies the motion to strike hearsay statements and will consider the evidence on summary judgment. How the evidence may be presented and for what purpose during trial is presently unknown. Thus, the admissibility of the evidence at trial is not decided here.

---

[8] The parties' briefing refers to "admissions by a party opponent" in discussing Rule 801(d)(2). However, the rule no longer refers to "admissions" but, rather, "an opposing party's statement." Fed. R. Evid. 801(d)(2) Advisory Comm. Notes to 2011 Amend. This is so because Rule 801(d)(2) does not require the statement to be an admission or against the speaker's interest, it need only be made by the party against whom it is offered. *See Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985); *U.S. v. McGee*, 189 F.3d 626, 631 (7th Cir. 1999); *Wilson v. City of Los Angeles*, 2020 WL 7711836, at *9 (C.D. Cal. July 20, 2020) (citations omitted). In contrast, the hearsay exception in Rule 804(b)(3), which applies to an unavailable declarant, requires the statement to be against the declarant's interest.

### ii.    Inconsistent Statements

Defendants move to strike as inconsistent, Plaintiff's statements and evidence regarding: 1) when District 93 was informed of JD's behavior (Dkt. 39-2, Ames Dec. ¶¶ 7, 8, 13; Dkt. 39-1, PSOF[9] ¶¶ 10, 39); and 2) Plaintiff's conversation with Woolstenhulme (Dkt. 39-2, Ames Dec. ¶ 25). (Dkt. 44). Plaintiff maintains the submissions are not inconsistent. (Dkt. 48).

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting [their] prior deposition testimony." *Van Asdale v. Int'l. Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). The "sham affidavit rule" prevents "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting [their] own prior testimony," which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotations omitted).

Invoking the sham affidavit rule requires a district court to conclude: 1) the contradictory affidavit is in fact a "sham," and 2) the inconsistency between the deposition testimony and subsequent affidavit is clear and unambiguous. *Kennedy*, 952 F.2d at 266-67. However, the sham affidavit rule "'should be applied with caution'" because it is in tension with the principle that the court is not to make credibility

---

[9] "PSOF" denotes Plaintiff's Statement Of Facts filed at Docket Number 39-1. "DSOF" denotes Defendants' Statement of Facts filed at Docket Number 38-11.

determinations when granting or denying summary judgment. *Van Asdale*, 577 F.3d at 988 (quoting *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993)). Applying this standard here, the Court finds Plaintiff's Declaration is not a sham and is not clearly inconsistent with her deposition testimony.

As to the challenged statements concerning when District 93 was informed of JD's behavior (Dkt. 39-2, Ames Dec. ¶¶ 7, 8, 13; Dkt. 39-1, PSOF ¶¶ 10, 39), Defendants argue the Declaration's statements are inconsistent with Plaintiff's deposition testimony that she did not disclose the details of JD's conduct to District 93 administration before December 2, 2021. Having carefully reviewed the statements Defendants seek to strike and the submissions of the parties, the Court finds the challenged statements are not clearly in conflict with Plaintiff's prior deposition testimony, contrary to Defendants' assertions.

Plaintiff's deposition contains testimony indicating the administration may have known about JD's conduct prior to December of 2021. For instance, Plaintiff testified that JD's conduct was part of the teachers' weekly team meetings starting in September, which Miller and Chapple attended. (Dkt. 38-3 and 39-13, Ames Depo. at 123:14-25, 132:2-8, 174:1-14, 179:16-21, 215:5-9). Further, there is other evidence indicating Defendants were notified or were aware of the offending conduct prior to December 2, 2021. (Dkt. 39-11, Ex. H, Title IX Written Determination); (Dkt. 39-4, Ex. A, Title IX Investigation); (Dkt. 39-5, Ex. B, Title IX Timeline of Events). Plaintiff's Declaration therefore is not clearly inconsistent with her deposition testimony.

**MEMORANDUM DECISION AND ORDER - 11**

What is clear, is that the parties hotly dispute when District 93 administrators became aware of and/or were notified of JD's conduct. To that end, the parties offer differing interpretations of the deposition testimony and other evidence in their submissions on summary judgment. Resolution of such factual and credibility questions are for the jury to resolve at trial. At the summary judgment stage, the Court is tasked only with determining whether Plaintiff has identified evidence giving rise to a genuine issue of material fact. The motion to strike is therefore denied as it relates to Paragraphs 7, 8, and 13 of Plaintiff's Declaration and Paragraphs 10 and 39 of Plaintiff's Statement of Facts.

As to Plaintiff's conversation with Woolstenhulme, the Court has not considered the challenged statement of Woolstenhulme contained in the last sentence of Paragraph 25 in Plaintiff's Declaration in deciding the motion for summary judgment. (Dkt. 39-2, Ames Dec. ¶ 25).[10] The motion to strike as to Paragraph 25 is therefore denied as moot.

### B.    Motion to Strike Title IX Written Determination

Defendants request an order precluding Plaintiff from utilizing, referring to, or citing the Title IX Written Determination authored by Heath Jackson at any point during this litigation. (Dkt. 45, 51). The motion is brought pursuant to Federal Rule of Civil

---

[10] Defendants incorrectly quote the portion of Paragraph 25 from Plaintiff's Declaration that they seek to strike by including a sentence from the preceding Paragraph 24 relevant to Plaintiff's conversation with Miller. *Compare* (Dkt. 44 at 23 and Dkt. 39-2, Ames Dec. ¶¶ 24, 25). Because the motion to strike Paragraph 25 expressly challenges only a conversation with Woolstenhulme, the Court has considered only that portion of the quoted statement relevant to Woolstenhulme.

Procedure 56(c) and (e), Federal Rules of Evidence 403, 407, 602, 701, 702, and 801, and public policy. Plaintiff objects to the motion, arguing the document is properly considered on summary judgment and is admissible evidence at trial. (Dkt. 49).

As a preliminary matter, Defendants' motion to strike is essentially a motion in limine to preclude all references to and any use of the Title IX Written Determination at all phases of this case. The arguments made and authorities relied on by Defendants concern the use and admissibility of evidence during a jury trial, not the Court's consideration of materials submitted relevant to a summary judgment motion. This is an important distinction. As noted above, the summary judgment stage focuses on the content of the evidence. Evidence may be evaluated on a motion for summary judgment so long as it could be presented in an admissible form at trial. *Fraser*, 342 F.3d at 1036; *Burch*, 433 F.Supp.2d at 1120. Further, arguments that the evidence is irrelevant or inadmissible under Rule 403 are inapplicable at this stage and are more properly raised before trial. *Savage*, 689 F.Supp.3d at 793-94. Likewise, objections based on improper legal conclusions is duplicative of the summary judgment standard and are therefore denied. *Gypsum Resources, LLC v. Clark County*, 674 F.Supp.3d 985, 1001 n. 5 (D. Nev. 2023); *Thomsen v. NaphCare, Inc.*, 2023 WL 8701971, at *13 (D. Or. Dec. 15, 2023) (denying motions to exclude improper legal opinions in determining summary judgment). For these reasons, the Court denies Defendants' motion to the extent they seek to preclude any and all use of or reference to the document during the entirety of this litigation, as such a broad-sweeping determination is premature at this stage.

**MEMORANDUM DECISION AND ORDER - 13**

Instead, the Court will consider Defendants' motion to the extent it seeks to preclude Plaintiff from relying on the document in responding to the motion for summary judgment. Defendants argue Jackson is not qualified to render the legal opinions contained in the Title IX Written Determination and lacks personal knowledge of the alleged events and, thus, the contents of the document are inadmissible, untrustworthy, and prejudicial. Defendants further argue the document is inadmissible hearsay. (Dkt. 45, 51). Plaintiff maintains Defendants opened the door to the admission of the document by arguing they complied with Title VII and Title IX by conducting an investigation. Additionally, Plaintiff asserts the document is admissible as it is the best, most complete evidence of the investigation, it falls within exceptions to the hearsay rule, and it is not unduly prejudicial. (Dkt. 49).

Jackson, the Executive Director of Planning and Personnel for District 93, was assigned by Woolstenhulme as the Decision Maker on Plaintiff's Title IX Complaint. (Dkt. 39-4, 39-11). District 93's Title IX Coordinator, Ken Marlowe, assigned Justin Jolley and Cara McCartney to investigate Plaintiff's Title IX Complaint. (Dkt. 39-4, 39-11). Jolley and McCartney completed their Investigation Report on March 18, 2022, which Jackson relied on in rendering the Title IX Written Determination that is the subject of Defendants' Motion to Strike. (Dkt. 39-4, 39-11).[11]

---

[11] Notably, Defendants have not moved to strike the Investigation Report and have not challenged the reliability or trustworthiness of that document or the appointed investigators. (Dkt. 45).

**MEMORANDUM DECISION AND ORDER - 14**

The Title IX Written Determination found that JD made inappropriate comments and engaged in offensive conduct between September 2021 and January 2022, which were observed and reported by multiple teachers. Jackson found the comments and conduct were general in nature but escalated over time and became directed at Plaintiff, rising to the level of a violation of Title IX. JD's inappropriate behaviors were not reported to the Title IX Coordinator by any of the individuals who had direct knowledge, including Miller, Chapple, and Plaintiff. Jackson concluded that the comments and conduct were inappropriate, objectively offensive, unwelcome, and rose to the level of being severe and pervasive such that a hostile environment was created that prevented Plaintiff from continuing her work. Jackson found that the evidence showed District 93 was deliberately indifferent for a period of time from early November through the middle of December. Jackson offered recommendations for disciplinary actions and responsibility, including: suspension and counseling for JD; and district-wide training on properly filing complaints and reports of Title IX violations for administrators, district leadership, and all employees.

The Court finds the Title IX Written Determination may be presented in a form that would be admissible during trial and, therefore, is properly considered in deciding the motion for summary judgment. Fed. R. Civ. P. 56(c)(2). For instance, evidence of the Title IX Written Determination may be admitted through testimony by Jackson, the investigators, or the other individuals who participated in the investigation; as a public record; or under another exception to the hearsay rule. Fed. R. Evid. 402, 602, 801(d)(2),

**MEMORANDUM DECISION AND ORDER - 15**

803(8). Factual findings in investigative reports are admissible under Rule 803(8), unless they are shown to be untrustworthy. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *Combs v. Wilkinson*, 315 F.3d 548, 555056 (6th Cir. 2002) (rejecting argument that investigative report was not admissible under Rule 602 or 803(8) for lack of authors' personal knowledge because such reports "embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge"); *Sherman v. Regents of Univ. of Cal.*, 2022 WL 1471417, at *6 (N.D. Cal. May 10, 2022). Rule 602's requirement limiting witness testimony to matters about which the witness has personal knowledge does not apply to official reports admissible under Rule 803(8). *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009). Lack of personal knowledge is duplicative of the summary judgment standard and not a basis for excluding evidence at this stage. *Holt*, 370 F.Supp.3d at 1164 (citing *Burch*, 433 F.Supp.2d at 1122).

For purposes of this motion, the Court finds the report is sufficiently trustworthy to be considered in deciding the motion for summary judgment. Relevant factors in determining the trustworthiness of a public report include "'(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation.'" *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010) (quoting *Beech*, 488 U.S. at 167 n.11).

Here, Jackson's credentials, training, and appointment as District 93's appointed Decision Maker demonstrate he possessed the skill and experience to make the factual

findings contained in the report. (Dkt. 39-19, Ex. O, Jackson Depo. at 7:8-11:10); (Dkt. 39-11, Ex. H). The Title IX investigation and Title IX Written Determination were timely completed within a few months of Plaintiff submitting a formal Title IX complaint. No hearing was held. However, consistent with the District's procedures, the parties were provided with the evidence gathered by the investigators and given an opportunity to respond. There is no indication that the investigators or Jackson were motivated by any bias, despite the possibility of litigation. That Jackson relied on the investigation completed by Jolley and McCartney and did not personally interview the witnesses, does not render the entirety of the Title IX Written Determination, or its contents, untrustworthy or inadmissible in all forms. *See, e.g., Doe v. Forest Hills School. Dist.*, 2015 WL 9906260, at *7 (W.D. Mich. March 31, 2015). For these reasons, the Court finds the findings of fact contained in the Title IX Written Determination are properly considered in deciding the motion for summary judgment.

Defendant relies heavily on *Sanders v. Univ. of Idaho, College of Law*, 634 F.Supp.3d 923, 932-33 (D. Idaho 2022). There the court excluded an agency's determination that there were insufficient facts to continue a Title VII investigation because the determination had little probative value and was unduly prejudicial. (Dkt. 45, 51). However, Defendants' reliance is misplaced as the *Sanders* decision contradicts Defendants' position here. In contrast to *Sanders*, the Title IX Written Determination in this case concluded that District 93's administration <u>had</u> violated Title IX. Under the authorities discussed in *Sanders*, an agency's determination that a viable claim of

**MEMORANDUM DECISION AND ORDER - 17**

discrimination exists is per se admissible. *Sanders*, 634 F.Supp.3d at 932 (citing *Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981)); *see also Carbajal v. Hayes Mngmt. Servs., Inc.*, 2023 WL 6463041, at *4 (D. Idaho Oct. 4, 2023) (distinguishing between the admissibility of an agency's determination that probable cause does exist and does not exist). Further, the court in *Sanders* was considering the evidence on a motion in limine, not summary judgment. Defendants' arguments that the Title IX Written Determination here invades the providence of the jury and is unduly prejudicial, are matters to be considered at a later stage.

Based on the foregoing, the motion to strike the Title IX Written Determination is denied. The document is properly considered on summary judgment. The Court makes no determination at this time concerning whether the evidence will be admitted during trial.

## 2.     Motion for Summary Judgment

### A.     Count One: Title VII/IHRA[12] Hostile Work Environment Claim against District 93

Title VII of the Civil Rights Act of 1964 prohibits discrimination based on sex, including sexual harassment, in employment. 42 U.S.C. § 2000e-2(a)(1); *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). "This includes a prohibition against the creation of a hostile work environment." *Reynaga v. Roseburg Forest Products*, 847

---

[12] The analysis of Plaintiff's claims under Title VII is identical to the analysis under the IHRA and, therefore, need not be separately analyzed. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1279-80 (9th Cir. 2017) (citing *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *Pherigo v. City of Burley*, 2023 WL 3231271, at *7 (D. Idaho May 3, 2023). The Court's determinations relevant to Title VII apply equally to the IHRA.

**MEMORANDUM DECISION AND ORDER - 18**

F.3d 678, 686 (9th Cir. 2017) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To prevail on a hostile work environment claim, the employee must show 1) they were

subject to a hostile work environment; and 2) their employer was liable for the conduct

that created the hostile environment. *Fried*, 18 F.4th at 647; *Campbell v. Hawaii Dept. of

Ed.*, 892 F.3d 1005, 1017 (9th Cir. 2018); *Fuller v. Idaho Dept. of Corrections*, 865 F.3d

1154, 1161 (9th Cir. 2017). On this motion, Defendants contest both elements.

### i. Hostile Work Environment

To determine whether Plaintiff was subjected to a hostile work environment, the

Court examines three factors: 1) whether Plaintiff was subjected to verbal or physical

conduct of a sexual nature; 2) whether the conduct was unwelcome; and 3) whether "the

conduct was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Arizona ex rel. Horne v. Geo

Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (internal quotation marks omitted); Ninth

Cir. Jury Insr. 10.5. On the third factor, Plaintiff must show her work environment was

"both objectively and subjectively offensive, one that a reasonable person would find

hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (internal

quotation marks omitted). The objective analysis is viewed "from the perspective of a

reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Servs., Inc.*,

523 U.S. 75, 81 (1998); *see also Fuller*, 865 F.3d at 1161.

The parties do not dispute the first two factors – that Plaintiff was subjected to

unwanted verbal and physical conduct based on her sex – and, do not dispute that

**MEMORANDUM DECISION AND ORDER - 19**

Plaintiff subjectively perceived her work environment to be hostile. Defendants' motion for summary judgment contests only the objective aspect of the third factor - whether the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. (Dkt. 38, 43). For the reasons that follow, the Court finds Plaintiff has adduced evidence of sufficiently severe or pervasive sexually offensive conduct from which a reasonable juror could conclude that her work environment was objectively hostile when viewed from the perspective of a reasonable woman in Plaintiff's position. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002).

In determining whether a work environment is sufficiently hostile such that it violates Title VII, the Court evaluates the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Fuller*, 865 F.3d at 1161 (quoting *Little*, 301 F.3d at 966). The nature of the conduct, the social context, the relationships and status of the individuals involved, are among the relevant factors to consider in evaluating the totality of the circumstances. *Mongelli v. Red Clay Consolidated Sch. Dist. Bd. of Educ.*, 491 F.Supp.2d 467, 477 (D. Del. 2007); *Yeaman v. City of Burley*, 2023 WL 2868575, at *6 (D. Idaho April 10, 2023) (quoting *Oncale*, 523 U.S. at 82)). No single factor is required. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (alteration omitted) (quoting *Harris*, 510 U.S. at 23). Rather, "[t]he required level of severity or seriousness

**MEMORANDUM DECISION AND ORDER - 20**

varies inversely with the pervasiveness or frequency of the conduct." *Reynaga*, 847 F.3d at 687 (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (cleaned up)).

"'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive work environment." *Davis*, 520 F.3d at 1095 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up)). "[B]ut, the harassment need not be so severe as to cause diagnosed psychological injury. It is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for [the employee] to do [their] job, to take pride in [their] work, and to desire to stay in [their] position." *Reynaga*, 847 F.3d at 687 (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). Further, the "hostility need not be directly targeted at the plaintiff to be relevant to [their] hostile work environment claim." *Id.* (citation omitted).

Here, JD's harassing conduct occurred in the middle school setting; was perpetuated by a non-special education student; and was escalating and increasingly directed towards Plaintiff, who was one of JD's teachers. (Dkt. 39-11, Ex. P). While less common, student-on-teacher harassment may give rise to employer liability. *See, e.g., Bohnert v. Roman Catholic Archbishop of San Francisco*, 136 F.Supp.3d 1094, 1121 (N.D. Cal. 2015); *Mongelli*, 491 F.Supp.2d at 477.

That the source of the harassment in this case was a middle school student and the context was in the school setting are considerations relevant to the Court's determination

**MEMORANDUM DECISION AND ORDER - 21**

of whether, from an objective standpoint, the conduct was sufficiently severe to create an abusive working environment. While some inappropriate adolescent behavior by students may be tolerable in a middle school setting, there is evidence in this case that JD's behavior exceeded what one would reasonably expect to see in that context. *Compare Kilroy v. Los Angeles Unif. Sch. Dist. Bd. of Ed.*, 2016 WL 5662042, at \*10 (C.D. Cal. Aug. 18, 2016) (finding no triable issue of fact, in part, because the infrequent slurs by students towards a teacher under the particular circumstances of the case did not create an abusive working environment); *Bohnert*, 136 F.Supp.3d at 1121 (finding triable issue of fact where male students subjected female teacher to graffiti of sexual nature, distributed upskirt photograph of her, posted sexually graphic meme about her online, and made sexually offensive comments about her on social media site); *Mongelli*, 491 F.Supp.2d at 477-81 (finding conduct by a special education student towards a teacher was not sufficiently severe or pervasive).

JD's harassing conduct was more than merely offensive utterances or actions of an overly exuberant youth. The nature of the offending conduct involved inappropriate sexually explicit comments, and offensive highly-suggestive sexual references directed at Plaintiff and others. JD's comments and conduct towards Plaintiff were targeted at her gender, physical appearance, sexually suggestive, offensive, demeaning, wholly inappropriate, and made publicly in the presence of other teachers and students.

In particular, the Court finds the frequency and duration of JD's harassing behavior is compelling and strong evidence of a hostile work environment. JD's

**MEMORANDUM DECISION AND ORDER - 22**

offensive conduct occurred on a daily basis both during class and outside of class, and escalated over the course of approximately four months – beginning at the start of the 2021-2022 school year. (Dkt. 39-11, Ex. H ); (Dkt. 39-19, Jackson Depo. at 19:15-25). His remarks and gestures were made generally towards other teachers and students, and were increasingly directed towards Plaintiff individually as the school year progressed. (Dkt. 39-4, Ex. A; Dkt. 39-11, Ex. H).

Notably, Plaintiff and other teachers discussed JD's conduct at their weekly meetings, kept a log of his conduct, and reported the conduct to school administrators. That other teachers viewed JD's behavior as inappropriate and offensive and another teacher reported to Defendants that JD was harassing Plaintiff, is particularly telling evidence that JD's conduct was objectively severe and pervasive, and created a hostile working environment. (Dkt. 39-1, PSOF ¶¶ 12-13, 23).

Further, there is evidence that JD's behavior was disruptive of Plaintiff's work environment, and affected other students and teachers to the point that JD was removed from classrooms and other disciplinary measures were taken that were often unsuccessful or only moderately effective. JD's conduct persisted despite the measures taken by Plaintiff and other teachers to address his behavior. There is some evidence to suggest the school administrators were reluctant to discipline JD, despite knowing of his behavior, because of prior interactions with his parents and his father's position. (Dkt. 39-1, PSOF ¶¶ 32, 51-53). Plaintiff testified that JD's conduct was sufficiently severe to cause her to feel that she could not return to her job teaching at Black Canyon Middle School with JD

present. (Dkt. 39-1, PSOF ¶ 54). Construing this evidence in favor of the non-movant Plaintiff, the Court finds that a jury could conclude that JD's behavior unreasonably interfered with Plaintiff's work environment and ability to effectively perform her job, and negatively impacted Plaintiff's desire to remain in her position and take pride in her work.

Based on the foregoing, the Court finds Plaintiff has identified evidence upon which a jury could find that JD's behavior was sufficiently severe and pervasive to constitute a hostile work environment. *Fuller*, 865 F.3d at 1161. Plaintiff has therefore established a genuine issue of material fact sufficient to defeat summary judgment on this claim.

### ii.    Employer Liability for Hostile Work Environment

An employer may be found liable pursuant to Title VII for a hostile work environment created by its own acts, or by failing to correct or prevent discriminatory conduct by a co-worker or third party that it knew or should have known about. *Vance v. Ball State Univ.*, 570 U.S. 421, 427-31 (2013); *Fuller*, 865 F.3d at 1164; *Reynaga*, 847 F.3d at 689; *Fried*, 18 F.4th at 647 (citing cases); *Bohnert*, 136 F.Supp.3d at 1120-21 ("[E]mployers may be liable for failing to prevent or remedy sexual harassment among co-workers [or third parties] of which management-level employees knew or in the exercise of reasonable care should have known.").

The proper focus for the hostile work environment claim is the employer's response to the discriminatory conduct. *Fried*, 18 F.4th at 650. "[T]he reasonableness of

**MEMORANDUM DECISION AND ORDER - 24**

an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment." *Little*, 301 F.3d at 968 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)). If "the remedy attempted is ineffectual, liability will attach." *Id.* (quoting *Fuller v. City of Oakland (Fuller Oakland)*, 47 F.3d 1522, 1528–29 (9th Cir. 1995)). "In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct." *Id.* (quoting *Ellison*, 924 F.2d at 882).

"Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Bohnert*, 136 F.Supp.3d at 1120 (quoting *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 536 (7th Cir. 1993)). An employer may be held to account for the actions of others "only if, after learning of the harassment, it failed to take prompt corrective measures that were 'reasonably calculated to end the harassment.'" *Campbell v. Hawaii Dept. Ed.*, 892 F.3d 1005, 1017 (9th Cir. 2018) (quoting *Freitag v. Ayers*, 468 F.3d 528, 539–40 (9th Cir. 2006)). To determine whether an employer took immediate and corrective action, courts consider "whether the employer's response to known harassment subjected the employee to further harassment" and whether "the employer either ratifies or acquiesces in the harassment." *Fried*, 18 F.4th at 651. Conversely, "an employer's prompt corrective response can insulate an employer from liability for an employee's hostile work environment claim." *Id.* at 650 (discussing *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000)). "Remedial action must include some form of disciplinary measures, which must be proportionate to the seriousness of the offense."

**MEMORANDUM DECISION AND ORDER - 25**

*Reynaga*, 847 F.3d at 689 (internal citations and quotations omitted).

Here, the parties dispute when District 93 knew about JD's conduct, and whether District 93 responded appropriately to the conduct. Defendants maintain they did not know about JD's conduct towards Plaintiff until December of 2021, at which time they took appropriate and timely action in response to the reports. Plaintiff argues Defendants were generally aware of JD's actions at his prior school and were made aware of his conduct at Black Canyon Middle School near the beginning of the 2021-2022 school year. Despite knowing of JD's conduct, Plaintiff contends the Defendants failed to take any action to address the conduct for several months and the actions that they eventually did take were not sufficient.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has identified evidence demonstrating Defendants knew about JD's conduct prior to December 2021, and that Defendants failed to act for a period of time despite knowing of the offending conduct.

Plaintiff testified that Miller and Chapple were told about JD's conduct during the team's monthly Monday meetings before December 2021. (Dkt. 39-12 and 39-13, Ames Depo. at 173:23-175:1, 178:13-17, 179:16-21, 212:15-22, 215:5-9, 217:9-20). While the exact timing and extent of notice provided is unclear from the present record, drawing inferences in favor of the non-movant for purposes of summary judgment, the evidence suggests that JD's conduct was discussed at the team meetings as early as September 2021, and that Miller and Chapple attended these meetings. (Dkt. 38-3, Dkt. 39-12, Ames

Depo. at 122:24-125:6, 173:23-182:2). Further, there is evidence that other teachers reported JD's conduct to Miller and Chapple between August and December 2021. (Dkt. 39-1, PSOF ¶¶ 1-2, 9, 11-14, 16, 21-23, 26-28). There is no evidence that Defendants took any action to address JD's conduct prior to December 2021.

Additionally, the Court finds there are questions of fact concerning whether Defendants' actions responding to JD's conduct, prior to and after December 2021, were reasonably likely to stop the harassment. For instance, Miller declined repeated requests by Plaintiff and other teachers to meet with JD's parents and told the teachers more than once that he would contact JD's parents but did not do so until mid-December 2021. (Dkt. 38-11, DSOF ¶¶ 6, 16; Dkt. 39-1, PSOF ¶¶ 9, 11, 19, 22). The January 6, 2022 meeting with JD's parents was largely unsuccessful and ineffective in addressing JD's behavior. Further, there is evidence to suggest that Defendants' decision to remove JD from Plaintiff's classroom, but not from the pod or school, may not have stopped JD's harassment of Plaintiff. (Dkt. 39-1, PSOF ¶¶ 7, 38). Consequently, Plaintiff did not return to her position at Black Canyon Middle School because she believed Defendants' actions would not have stopped JD's harassment and that the hostile work environment would persist had she returned. (Dkt. 39-1, PSOF ¶ 54).

Based on the foregoing, the Court finds Plaintiff has established the existence of a genuine issue of material fact on the employer liability element of her hostile work environment claim. Therefore, Defendants' motion for summary judgment will be denied on this basis as well.

**MEMORANDUM DECISION AND ORDER - 27**

**B.      Count Two – Title VII/IHRA Retaliation Claim against District 93**

Title VII's antiretaliation provision makes it unlawful for an employer to discriminate against an employee because the employee has opposed any employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title[.]"). To establish a prima facie retaliation claim, a plaintiff must show: (1) they engaged in protected activity under Title VII or opposed an unlawful employment practice; (2) the employer subjected the plaintiff to a materially adverse employment action; and (3) there was a "but-for" causal relationship between the two. *Westendorf v. West Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); Ninth Cir. Jury Instr. 10.8. If the prima facie case is established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions, after which the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).

Here, Defendants argue Plaintiff has failed to identify an adverse employment

**MEMORANDUM DECISION AND ORDER - 28**

action. (Dkt. 38 at 15-18).[13] The Complaint alleges Plaintiff was subject to adverse employment actions as a result of having reported JD's sexual harassment and hostile work environment, "including being required to meet with JD's parents and being subjected to their abuse, being forced to endure a three-month long investigation while on unpaid leave, and being constructively discharged." (Dkt. 1 ¶¶ 68, 69). Plaintiff further argues District 93 failed to provide her with supportive measures contrary to its Title IX policy; and that she was constructively discharged because District 93 allowed JD to remain at school and continue his harassing conduct knowing it created intolerable conditions for Plaintiff such that no reasonable person in her position would have returned. (Dkt. 39 at 14-16). Defendants contend the actions alleged by Plaintiff – the parent-teacher meeting, not expelling JD, and not paying Plaintiff while on voluntary leave – were lawful actions and requirements of Plaintiff's job, not retaliatory adverse employment actions. (Dkt. 43 at 6-7).

In Title VII retaliation cases, an adverse action exists when "a reasonable [person] would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted); Ninth Cir. Jury Instr. 10.9, 10.10.

---

[13] On this motion, Defendants' challenge to the Title VII retaliation claim solely argues that Plaintiff has not identified an adverse employment action. (Dkt. 38, 43). The Court therefore will discuss only the second element of the claim.

Constructive discharge occurs where a retaliating employer creates working conditions so "'extraordinary and egregious [as] to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job.'" *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1225 (9th Cir. 2012) (quoting *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000))). That is to say, "constructive discharge occurs when the working conditions are so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign." Ninth Cir. Model Jury Instr. 10.13.

Viewing the evidence presented on this motion in favor of the non-moving party, the Court finds Plaintiff has established that a genuine dispute exists concerning whether she suffered an adverse employment action based on the denial of her request for paid leave in violation of District 93's policy and constructive discharge.

Following the parent-teacher meeting, Plaintiff argues District 93 denied her request for paid leave contrary to its policy to provide supportive measures, forcing her to take unpaid leave. (Dkt. 39 at 11-12, 14-15). The parties dispute whether District 93's denial of Plaintiff's request for paid leave violated its policy. The parties have presented conflicting and contradictory positions on this issue in their briefing and arguments during the hearing. In their briefing, the parties disagreed concerning whether Plaintiff was paid during the time she was on leave. (Dkt. 38-11, DSOF ¶ 27) ("Ms. Ames continued to receive pay checks while on leave, and Defendants offered to meet with her to discuss being additionally compensated for the leave she took during this time."); (Dkt.

**MEMORANDUM DECISION AND ORDER - 30**

39-1, PSOF ¶ 54) ("Ames took leave without pay beginning in mid-January 2022, during the pendency of the Title IX investigation."); (Dkt. 39-2, Ames Dec. ¶ 32) ("[B]ecause the District would not provide me with paid leave, I had to use my PTO."). During the hearing, counsel for both parties initially persisted in offering their own differing characterizations of Plaintiff's compensation during the time she was on leave. Defendants maintained that Plaintiff was "paid through benefits," and received the full amount of her salary for the year despite leaving before the end of the school year. Plaintiff asserted that she was denied paid leave contrary to District 93's policy and was forced to take personal time off (PTO). Ultimately, the parties agreed during the hearing that Plaintiff received pay while she was on leave because she was using her PTO.

However, the parties continue to disagree concerning whether District 93's policy for providing "supportive measures…without fee or charge" included paid leaves of absence and, thus, whether Plaintiff suffered an adverse employment action when Defendants denied her request for paid leave as a supportive measure under the policy. (Dkt. 39-20, Ex. P). During the hearing, the parties' offered varied interpretations of the supportive measures provision of the policy, making their respective positions unclear and difficult to discern. Because the parties have not fully fleshed out this issue, it is impossible for the Court to determine the proper contours of the policy provisions at this time as a matter of law.

For purposes of this motion, the Court must construe the evidence in favor of Plaintiff. In doing so, the Court finds there are genuine issues in dispute concerning

**MEMORANDUM DECISION AND ORDER - 31**

whether the policy for providing supportive measures includes paid leaves of absence. The policy defines "supportive measures" to be: non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent after the Title IX Coordinator has been provided a report of sexual harassment." (Dkt. 39-20 at 9). Under the policy, supportive measures includes "leaves of absence." (Dkt. 39-20, Ex. P at 9-10).

There is no dispute that Plaintiff had reported sexual harassment to the Title IX Coordinator at the time she requested a paid leave of absence. (Dkt. 38-4, Woolstenhulme Depo. 21:1-10). The question here is whether District 93's denial of her request for paid leave deprived Plaintiff of a supportive measure provided for under the policy. If so, then the denial could be found to be an adverse employment action. If not, then Plaintiff has failed to show that she suffered an adverse employment action based on the denial of her request for paid leave, because she was paid during her leave and she received her full salary for the school year.[14] Plaintiff ultimately bears the burden to prove that District 93's denial of her request for paid leave violated the policy. If the evidence at trial fails to demonstrate that the policy included paid leave as a supportive measure, Plaintiff will not be allowed to argue before the jury that the denial of paid leave in violation of the policy was an adverse employment action.

---

[14] Notably, Plaintiff has not argued or presented evidence that she was denied any benefit she would have received had she not had to take PTO, e.g., that she would have been reimbursed for any unused PTO at the end of the school year. Thus, the fact that she used all of her PTO, alone, was not an adverse employment action.

**MEMORANDUM DECISION AND ORDER - 32**

The cases relied upon by Defendants to show that allowing Plaintiff to take leave during the investigation was not an adverse employment action are factually distinct. (Dkt. 38 at 17-18) (discussing *Campbell* and *Mukaida*). In *Campbell*, 892 F.3d at 1014, the school district granted plaintiff's voluntary requests for two years of unpaid leave. The court held that granting her requests for unpaid leave was not an adverse employment action because there was not policy or practice allowing teachers to volunteer for extended periods of paid leave. In contrast, Plaintiff here argues District 93's policy allowed for supportive measures "without fee or charge," which included paid leave. Plaintiff claims she suffered an adverse employment action because Defendants <u>denied</u> her request for <u>paid</u> leave under that policy. Thus, the holding and reasoning in *Campbell* is inapposite because Defendants here did not simply grant Plaintiff's voluntary leave request. Rather, Plaintiff asserts Defendants <u>denied</u> her request for <u>paid</u> leave as a supportive measure under the policy. As discussed above, Plaintiff must prove that the policy allowed for paid leave as a supportive measure in order to prevail on this argument. Whether Plaintiff is able to do so remains to be seen.

Defendants also rely on *Mukaida v. Hawai'i*, 159 F.Supp.2d 1211 (D. Hawai'i 2001). There, the court found the plaintiff's voluntary use and exhaustion of sick leave, vacation, and leave sharing benefits, and taking administrative leave without pay were not adverse employment actions and were not actions taken by defendants that she was

**MEMORANDUM DECISION AND ORDER - 33**

subjected to. *Id.* at 1236.[15] In contrast here, similar to *Campbell*, Plaintiff is not alleging that her use of PTO was itself an adverse employment action. Rather, Plaintiff alleges that the Defendants' <u>denial</u> of her request for <u>paid</u> leave during the investigation as a supportive measure under the policy was an adverse employment action. That is to say, Plaintiff was forced to use her PTO because of Defendants' adverse employment action of denying her request for paid leave that she claims she was entitled to under the policy.

For the reasons discussed above, the Court finds Plaintiff has shown a genuine issue of material fact exists as to whether the denial of her request for paid leave under the policy was an adverse employment action.

Plaintiff further argues she was constructively discharged because of District 93's decision to allow JD to remain at school, although not in her class. (Dkt. 39 at 11-12, 14-15; Dkt. 39-1, PSOF ¶¶ 54-55; Dkt. 39-12, Ames Depo. at 29:2-25; 41:14-15). When viewed in favor of Plaintiff, the Court finds there is evidence that District 93's actions and decisions responding to JD's conduct left Plaintiff subject to the same harassment that she had complained of had she returned to work. Plaintiff testified that she felt unable to safely return to her position at Black Canyon Middle School knowing she

---

[15] The Court cites to a different portion of the *Mukaida* decision than Defendants' briefing, as it is the portion applicable to a Title VII retaliation claim. Defendants, on the other hand, cite to the portion of the *Mukaida* decision relevant to the Title VII claims of sexual harassment. (Dkt. 38 at 18) (citing *Mukaida*, 159 F.Supp.2d at 1230). The principle asserted by Defendants – that an employee's voluntary decision to use their employment benefits is not an adverse employment action – generally seems to apply to both claims. Nevertheless, the Court notes this discrepancy here because there are differences between the two types of Title VII claims and between the definitions of a tangible employment action and an adverse employment action.

would continue to be subject to sexual harassment by JD while he remained at the school. (Dkt. 39-13, Ames Depo. at 222:10-223:13). Consequently, Plaintiff took a leave of absence from her job and, ultimately, felt she could not return to work at District 93 or to teach elsewhere. (Dkt. 39-1, PSOF ¶¶ 54-55; Dkt. 39-12, Ames Depo. at 29:2-25). An objectively reasonable person would find these events "materially adverse" insofar as they "might have dissuaded" such person from complaining of or reporting sexual harassment in District 93. *Emeldi*, 673 F.3d at 1226 (quoting *Burlington*, 548 U.S. at 68).

Based on the foregoing, the Court finds Plaintiff has identified evidence of adverse employment actions – denial of paid leave in violation of the district's policy and constructive discharge. Accordingly, Defendants' motion for summary judgment on this claim is denied.

### C.     Count Three – Section 1983 Claim against All Defendants

To establish liability under Section 1983, Plaintiff must prove the Defendants: 1) acted under color of state law, and 2) deprived plaintiff of rights secured by the Constitution or federal statutes. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). On this motion, there is no dispute Defendants acted under the color of law. Turning to the second element, Plaintiff alleges Defendants violated her federally protected right to be free from discrimination based on sex under the Equal Protection Clause. (Dkt. 1 ¶¶ 73-78). Defendants argue Plaintiff has failed to demonstrate any violation of her equal protection rights, and cannot establish municipal liability against District 93 or individual liability against the named Defendants. (Dkt. 38 at 18-22).

**MEMORANDUM DECISION AND ORDER - 35**

### i.      Deprivation of a Constitutional Right

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV § 1. The Equal Protection Clause mandates that state and local governments treat alike all persons that are similarly situated, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), and confers a "federal constitutional right to be free from gender discrimination" at the hands of governmental actors. *Davis v. Passman*, 442 U.S. 228, 234–35 (1979). To prevail on a claim under Section 1983 for a violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citations omitted); *see also Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).

"A plaintiff may establish discriminatory purpose by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022) (internal marks and citations omitted). At summary judgment, a plaintiff asserting an equal protection claim "needs evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the individual defendants' conduct was motivated by gender discrimination." *Roe ex rel. Callahan v. Gustine Unif. Sch. Dist.*, 678 F.Supp.2d 1008,

**MEMORANDUM DECISION AND ORDER - 36**

1022 (E.D. Cal. 2009) (citing *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948–49 (9th Cir. 2003)).

A plaintiff also may bring a Section 1983 Equal Protection Clause claim based on a hostile work environment. *See Bator v. State of Hawai'i*, 39 F.3d 1021, 1028 (9th Cir. 1994). The same standards apply to hostile work environment claims brought under the Equal Protection Clause and under Title VII. A hostile work environment exists when an employee (1) is "subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fuller*, 865 F.3d at 1161 (internal quotation marks and citations omitted). Additionally, a plaintiff must show that the defendant's discrimination was intentional for an equal protection claim brought under Section 1983. *Bator*, 39 F.3d at 1028, n. 7 (noting a plaintiff must show intentional discrimination and state action for equal protection claims brought under § 1983, but not for Title VII claims); *Roe*, 678 F.Supp.2d at 1022.

For the reasons discussed above on the Title VII claims, the Court finds Plaintiff has identified evidence upon which a jury could find a hostile work environment existed. Thus, whether the Section 1983 equal protection claim survives summary judgment turns on whether Plaintiff can establish intentional discrimination by Defendants. To do so, Plaintiff must show that Defendants acted with intent to discriminate against her based upon her membership in a protected class and that Defendants' action had a discriminatory effect. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 37**

2005); *Benigni v. City of Hemet*, 879 F.2d 473, 477 (9th Cir. 1988). That is to say, Plaintiff must point to evidence that a discriminatory reason more likely than not motivated Defendants' actions, and that Defendants' actions adversely affected Plaintiff in some way. *Ballou*, 29 F.4th at 422.

Having carefully reviewed the entire record, the Court finds Plaintiff has not identified evidence that would enable a rational fact-finder to conclude that any of the Defendants discriminated against Plaintiff because of her gender. Indeed, the record presented reveals the opposite. The evidence shows that Defendants universally failed to take action in response to JD's misbehavior regardless of who reported it or who was subject to it – whether male or female, and whether teachers or students. (Dkt. 39-1, PSOF ¶¶ 11, 12, 13, 14, 22, 23, 26, 49).  Thus, even viewed in the light most favorable to Plaintiff, the record demonstrates that Defendants were indiscriminate in their failure to respond to JD's offensive behavior. Any actions policy, practice, or custom of the Defendants, however improper or ineffective, were applied equally to all genders and classes of people. Thus, there is no evidence of any discriminatory animus or intent. Plaintiff has therefore failed to establish an equal protection violation. *See, e.g., Reese*, 208 F.3d at 740 (finding no violation of Equal Protection Clause of the 14th Amendment where school district punished female students without punishing male students accused by the plaintiffs; court held "(t)here is no direct evidence of gender animus, nor is there even evidence of system-wide disparate impact in punishment between genders."); *Roe*, 678 F.Supp.2d at 1022-23 (granting summary judgment on Section 1983 claim where no

**MEMORANDUM DECISION AND ORDER - 38**

evidence that defendants conduct was motivated by gender discrimination). Plaintiff's

conclusory allegations to the contrary are insufficient to survive summary judgment. *See*

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For these reasons, Defendants'

motion for summary judgment will be granted on the Section 1983 claim.

### D.      Counts Four and Five – Title IX Claims against District 93

Title IX of the Education Amendments Act of 1972 prohibits intentional

discrimination on the basis of sex, stating: "No person in the United States shall, on the

basis of sex, be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any education program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a).[16] "Claims for violation of Title IX may be pursued

under two different theories of liability—(1) as a claim that the defendant violated Title

IX by failing to adequately respond to the plaintiff's assault (an individual claim); and (2)

as a claim that the defendant maintained 'a general policy of deliberate indifference to

reports of sexual misconduct, which heightened the risk that [the plaintiff] would be

assaulted' (a pre-assault claim)." *Stevens v. Brigham Young Univ.*, 588 F.Supp.3d 1117,

1128-29 (D. Idaho 2022) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093,

1099 (9th Cir. 2020)). Plaintiff asserts both theories against District 93 in Counts Four

---

[16] On this motion, Defendants do not dispute that District 93 receives federal funding. (Dkt. 38).

and Five. (Dkt. 1, 39).[17]

To prevail on Count Four, the Title IX individual claim, Plaintiff must establish:

(1) "[T]he school ... exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]";

(2) "[T]he plaintiff ... suffered harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school";

(3) "[A] school official with authority to address the alleged discrimination and to institute corrective measures on the [school's] behalf must have had 'actual knowledge' of the harassment";

(4) "[T]he school must have acted with 'deliberate indifference' to the harassment, such that the school's response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances"; and

(5) "[T]he school's deliberate indifference ... subject[ed the plaintiff] to harassment."

*Stevens*, 588 F.Supp.3d at 1128 (quoting *Brown v. State*, 23 F.4th 1173, 1179 (9th Cir. 2022) (quoting *Karasek*, 956 F.3d at 1105)).

To prevail on Count Five, the Title IX pre-assault claim, Plaintiff must establish:

(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct;[18]

(2) which created a heightened risk of sexual harassment that was known or obvious;

---

[17] The Complaint describes the Title IX claims, as follows: Count Four as "Actual Notice" and Count Five as "Heightened Risk." (Dkt. 1). The Court will identify the claims using the terms adopted in the relevant caselaw – individual and pre-assault - for consistency and clarity.

[18] Reports of sexual misconduct is not the only form of pre-assault conduct that is actionable under Title IX. *Karasek*, 956 F.3d at 1112, n. 5. The Court has considered this form of conduct here, because it is the basis alleged by Plaintiff in the Complaint. (Dkt. 1 ¶¶ 86-91).

**MEMORANDUM DECISION AND ORDER - 40**

(3) in a context subject to the school's control; and

(4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.

*Stevens*, 588 F.Supp.3d at 1129 (quoting *Karasek*, 956 F.3d at 1112). "A school need not have had actual knowledge of a specific instance of sexual misconduct or responded with deliberate indifference to that misconduct before damages liability may attach." *Id*. "Thus, 'where the official policy is one of deliberate indifference to a known overall risk of sexual harassment, notice of a particular harassment situation and an opportunity to cure it are not predicates for liability.'" *Id.* (quoting *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010)).

On this motion, Defendants argue both Title IX claims fail because Plaintiff cannot show she suffered severe and pervasive sexual harassment or a hostile workplace, and that District 93 was deliberately indifferent. (Dkt. 38 at 23-25). For the reasons stated below, the Court will deny summary judgment on Count Four as genuine issues of material fact have been shown, but will grant summary judgment on Count Five.

### i.   Severe and Pervasive Harassment

For the reasons discussed above relevant to the Title VII claims, the Court finds Plaintiff has identified evidence that shows, when viewed in the light most favorable to the non-movant, she was subject to frequent, repeated, unwelcome, and objectively offensive conduct of a sexual nature for several months. That evidence establishes a

**MEMORANDUM DECISION AND ORDER - 41**

genuine issue of material fact on the element of both Title IX claims requiring Plaintiff to prove the harassment was severe, pervasive, and objectively offensive.

### ii. Deliberate Indifference

#### a. Count Four – Individual Claim

As to deliberate indifference on the individual claim, "[f]or Title IX liability to attach, a plaintiff must demonstrate that the defendant acted with deliberate indifference to the reported harassment." *Stevens*, 588 F.Supp.3d at 1129 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). "Deliberate indifference occurs when the plaintiff proves the school's response was 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Oden v. N. Marianas Coll.*, 440 F. 3d 1085, 1089 (9th Cir. 2006)). "To avoid liability, 'the recipient must merely respond ... in a manner that is not clearly unreasonable.'" *Id.* (quoting *Karasek*, 956 F.3d at 1105).

Plaintiff has produced evidence that District 93 was deliberately indifferent to the reports of JD's harassing conduct towards Plaintiff. Despite receiving repeated reports of JD's misconduct and several requests by teachers for a meeting with JD's parents for at least three months – between September and December 2021– Defendants took no action in response to the escalating situation during that time. (Dkt. 39 at 24-25 and Dkt. 39-1, PSOF ¶¶ 1, 2, 7-9, 11-14, 16, 21, 22, 23, 26). On December 13, 2021, Defendants agreed to have the school resource officer and Chapple meet with all of the students in the pod, which did not have the desired effect. On December 15, 2021, Miller spoke with JD's father about the conduct, but the misconduct continued. It was not until January 6, 2022,

**MEMORANDUM DECISION AND ORDER - 42**

that a parent-teacher meeting was held. Thereafter, Defendants removed JD from Plaintiff's classroom, but allowed JD to remain in the same pod as Plaintiff and at the school, which Plaintiff argues would have subjected her to JD's continued harassment had she returned to her job.

Within this evidence are assertions of statements and inaction by Defendants which could be found to establish deliberate indifference. (Dkt. 39-1, PSOF ¶¶ 9, 10, 11, 19, 22, 23, 38-40); (Dkt. 39-2, Ames Dec. ¶¶ 11, 13, 15-18, 20-22). For instance, Defendants refusal to hold a parent-teacher meeting; statements by Defendants acknowledging the harassment but claiming there was nothing they could do; and that Defendants tried to dissuade Plaintiff from filing a Title IX complaint.

Viewing this evidence in the light favorable to Plaintiff, the Court finds a jury could conclude these facts demonstrate that District 93 was deliberately indifferent to the reports of JD's harassing conduct towards Plaintiff. Plaintiff has therefore established a genuine issue of material fact exists. Accordingly, the motion for summary judgment will be denied as to Count Four.

### b.  Count Five – Pre-Assault Claim

For deliberate indifference on the pre-assault claim, Plaintiff must show District 93 maintained an official policy that was deliberately indifferent to a known overall risk of sexual harassment, such as past reports of sexual misconduct. *Karasek*, 956 F.3d at 1112 (citing *Mansourian*, 602 F.3d at 967). The failure to remedy an obvious risk of sexual harassment may constitute an official policy of deliberate indifference in violation

**MEMORANDUM DECISION AND ORDER - 43**

of Title IX. *Karasek*, 956 F.3d at 1113 (discussing *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007)).

Here, the Complaint alleges District 93 had a policy of deliberate indifference to reports of sexual harassment as a result of its repeated failure to address reports of sexual misconduct by JD prior to becoming a student of Plaintiff. (Dkt. 1 ¶ 87). Plaintiff argues Defendants "did nothing" when they received the reports of JD's harassment towards Plaintiff despite knowing JD had previously harassed another student. (Dkt. 39 at 25). Defendants maintain they reasonably responded to the reports of harassment, and that Plaintiff has not shown a policy of deliberate indifference because JD was disciplined for the prior report of harassing another student and there were no reports that JD's conduct had affected teachers. (Dkt. 43 at 12-13). Having carefully reviewed the entire record, the Court finds Plaintiff has not identified evidence of a policy of deliberate indifference sufficient to defeat the motion for summary judgment.

Plaintiff's argument that Defendants' failure to act on the reports of JD's conduct towards her despite their knowledge of the prior incident is evidence of deliberate indifference, is a continuation of and relevant to the allegations supporting Count Four discussed above. (Dkt. 39 at 25). As to the pre-assault claim in Count Five, however, Plaintiff has not identified evidence that District 93 had an official policy of deliberate indifference towards sexual harassment. Just the opposite, District 93's Title IX policy expressly prohibited sexual harassment. (Dkt. 39-20, Ex. P). The prior incident involving JD and another student fails to evidence a policy of deliberate indifference because

**MEMORANDUM DECISION AND ORDER - 44**

Defendants disciplined JD for the prior incident. (Dkt. 39-1, PSOF ¶¶ 32, 51). Indeed, that Defendants took action to address the prior incident demonstrates that District 93 was not deliberately indifferent to reports of sexual harassment.

Further, there is no allegation or evidence that District 93 had a history of deliberate indifference to reports of sexual harassment or had created an overall heightened risk of sexual harassment. *See, e.g., Karasek*, 956 F.3d at 1113-14 (finding deliberate indifference based on evidence that the school had a reported history of deficiencies in its approach to sexual misconduct complaints that created an overall heightened risk of sexual harassment on campus). Rather, Plaintiff's argument is that Defendants' response, and lack of response, to the specific harassment in this case created a heightened risk to her. (Dkt. 39 at 25). Again, that is an argument properly addressed by the individual claim in Count Four.

For these reasons, the Court finds Plaintiff has not identified evidence of a policy of deliberate indifference towards sexual harassment, or reports of sexual harassment, in District 93. Plaintiff has therefore failed to show a genuine issue of material fact exists. Accordingly, summary judgment will be granted in favor of Defendants on Count Five.

**MEMORANDUM DECISION AND ORDER - 45**

## **ORDER**

NOW, THEREFORE IT IS HEREBY ORDERED as follows:

1)      Defendants' Motion for Summary Judgment (Dkt. 38) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Counts Three and Five, which are dismissed in their entirety. The motion is denied as to Counts One, Two, and Four.

2)      Defendants' Motion to Strike Portions of Plaintiff's Declaration (Dkt. 44) is **DENIED**.

3)      Defendants' Motion to Strike Title IX Written Determination (Dkt. 45) is **DENIED**.

4)      The parties are directed to confer and to then advise the Court as to how they intend to proceed in this matter by **October 25, 2024**.

DATED: October 1, 2024

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 46**